IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SITE 2020 INCORPORATED, | |
| Plaintiff, | |
| vs. | CV 21-63-M-DLC-KLD |
| SUPERIOR TRAFFIC SERVICES, LLC, | FINDINGS & RECOMMENDATION |
| Defendant. | |
| SUPERIOR TRAFFIC SERVICES, LLC and SUPERIOR TRAFFIC SYSTEMS, LLC, | |
| Counterclaim-Plaintiffs, | |
| vs. | |
| SITE 2020 INCORPORATED, | |
| Counterclaim-Defendant. | |

This patent infringement case comes before the Court on

Plaintiff/Counterclaim-Defendant Site 2020 Incorporated's ("Site 2020") motion to

dismiss Count XVIII of the Second Amended Counterclaims asserted by

Counterclaim-Plaintiffs Superior Traffic Services, LLC and Superior Traffic

Systems, LLC (collectively "Superior Traffic") for failure to state a claim upon

which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court recommends that Site 2020's motion be denied.

## I.   **Background**

Site 2020 and Superior Traffic are both involved in the portable traffic signal industry. (Doc. 47, at 43, ¶¶ 10, 12). Superior Traffic has developed an Automated Flagger Assistance Device ("AFAD") that uses Superior Traffic's patented Real-Time Traffic Management System ("RTMMS") and Technology Enabled Smart Signals ("TESS") technology to provide safe and reliable traffic control while relieving human flaggers of the danger of standing close to constricted traffic lanes. (Doc. 47, at 43 ¶ 11). Superior Traffic's AFAD does this by providing vehicle detection, cameras, and triple redundant communications between AFAD devices that allow traffic to be controlled in a variety of worksite configurations. (Doc. 47, at 43 ¶ 11). Superior Traffic holds all substantial rights in U.S. Patent No. 9,135,817 ("the '817 patent"). (Doc. 47, at ¶¶ 17-18).

Site 2020 is also in the business of developing AFADS, and its flagship product is an AFAD known as the Guardian SmartFlagger. (Doc. 47, at 44 ¶ 13). Site 2020 alleges it has improved "AFADs by enabling them to be placed rapidly for reliable temporary service, providing local networks for communication of control signals to provide fully- or semi-automated, safe and reliable traffic control

over distances long enough to accommodate all types of temporary worksites, while relieving human flaggers of the danger of standing close to constricted traffic lanes." (Doc. 29, at 3 ¶ 3).

In May 2021, Site 2020 filed this patent infringement action against Superior Traffic Services, alleging infringement of two patents that it claims protect novel aspects of the traffic control systems it has developed.  (Doc. 1). Superior Traffic Services answered and counterclaimed (Doc. 15), and Site 2020 subsequently amended its complaint. (Doc. 29). On September 15, 2021, Superior Traffic Services filed its answer to the amended complaint and amended its counterclaims to add Superior Traffic Systems as a counterclaim plaintiff and include a counterclaim for patent infringement against Site 2020.[1] (Doc. 47, at 40-77). Superior Traffic's counterclaim, which is set forth in Count XVIII, alleges direct and indirect infringement of the '817 patent. (Doc. 47, at 70-72 ¶¶ 136-146).

On September 29, 2021, Site 2020 answered Superior Traffic's Second Amended Counterclaims (Doc. 49) and filed the pending motion to dismiss Count XVIII on the ground that the Superior Traffic's counterclaim pleading does not contain sufficient factual allegations to state a plausible claim for patent infringement.  (Doc. 48).

---

[1] As indicated above, the Court refers to Counterclaim-Plaintiffs Superior Traffic Services and Superior Traffic Systems collectively as "Superior Traffic."

II.     **Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A cause of action

may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal

theory that is not cognizable as a matter of law, or if it fails to allege sufficient

facts to support an otherwise cognizable legal claim.  *SmileCare Dental Group v.*

*Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). When

reviewing a Rule 12(b)(6) motion to dismiss, the court is to accept all factual

allegations in the complaint as true and construe the pleading in the light most

favorable to the nonmoving party.  *Hospital Bldg. Co. v. Trustees of the Rex*

*Hospital*, 425 U.S. 738, 740 (1976); *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir.

1989).

The court's review under Rule 12(b)(6) is informed by the provision of Fed.

R. Civ. P. 8(a)(2) which requires that "a pleading must contain 'a short and plain

statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  This

pleading standard "does not require 'detailed factual allegations,' but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*,

556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint must offer more than "'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action..." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To withstand a motion to dismiss under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). This means that the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The facts alleged must be sufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). The *Twombly/Iqbal* plausibility standard is not "akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully..." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

## III.   **Discussion**

Site 2020 argues that Superior Traffic's counterclaim pleading does not state a claim for relief because contains only conclusory statements that a Site 2020 product includes or will include certain general components related to the claim language of the '817 patent, but fails to plead facts showing that any Site 2020 product plausibly infringes one or more of the patent claims.

Superior Traffic counters that it has adequately pled patent infringement, and also argues as a threshold matter that because Site 2020 has filed an answer to the Second Amended Counterclaims, its motion to dismiss should be denied as moot. Superior Traffic contends the fact that Site 2020 was able to answer necessarily defeats its argument that the counterclaim was not adequately pled.

The Ninth Circuit has held that "if a motion to dismiss for failure to state a claim is made after the answer is filed, the court can treat the motion as one for judgment on the pleadings" pursuant to Federal Rule of Civil Procedure 12(c). *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, which means that the same legal standard "applies to motions brought under either rule." *Cafasso, U.S. Ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1062 n. 4 (9th Cir. 2011).

Because Site 2020 filed its answer simultaneously with its motion to dismiss, the Court considers the motion as having been timely filed and need not treat it as a Rule 12(c) motion for judgment on the pleadings. See *Knoles v. Teva Pharm. USA, Inc.*, 2019 WL 5268928, at *2 (N.D. Cal. Oct. 17, 2019) (where the defendant files a Rule 12(b) motion simultaneously with its answer, the court "will view the motion as having preceded the answer and thus as having been interposed in timely fashion") (quoting 5C Charles Alan Wright, Arthur R. Miller & Edward

H. Cooper, Federal Practice and Procedure § 1361 (3d ed. 2004)).  Even if the motion were properly treated as a Rule 12(c) motion, the analysis that follows would be the same.

Although Superior Traffic does not argue that Site 2020's motion to dismiss is untimely, the fact that the Ninth Circuit permits the district court to treat a motion to dismiss that is filed after the answer as a motion for judgment on the pleadings, which is reviewed under the same standard as a motion to dismiss for failure to state claim, indicates that it is permissible to challenge the sufficiency of the factual allegations in a pleading even after filing an answer. While Site 2020's answer may be relevant to the issue of whether it had fair notice of the infringement counterclaim, the Court declines to go so far as to find the fact that it filed an answer renders its motion to dismiss moot. Therefore, the Court will consider Site 2020's motion on the merits.

### A.    Infringement Counterclaim Allegations

Superior Traffic sets forth the factual basis of its infringement counterclaim in a section of the Second Amended Counterclaims titled "Site 2020's Infringing Conduct."  (Doc. 47, at 53-57 ¶¶ 58- 64). Superior Traffic alleges that on or about August 19, 2021, Site 2020 posted a new video to its Facebook page entitled "Introducing Site 2020's newest product the Guardian Portable Traffic Light (PTL)." (Doc. 47, at 53 ¶ 58). As Superior Traffic describes it, Site 2020's chief

executive officer claims during the video narrative that the Site 2020 traffic light

"is the smartest portable traffic light in the world with GPS, cell and WiFi

connectivity, as well as live video recording and car counting technology," and the

video indicates that Site 2020 was taking pre-orders for October 1, 2021.

Superior Traffic further claims that on August 30, 2021, Hollohan appeared

in a news interview "during which he elaborated on the features of the Site 2020

PTL, which the interviewer referred to as the 'Guardian Smart Flagger'." (Doc. 47,

at 55 ¶ 60). Hollohan stated that the Site 2020 technology had been implemented in

several states, and explained that "instead of having two flaggers…, you can have

two small portable traffic lights that…pair to a centralized tablet on the job that

streams wireless video feeds from both sides to a centralized location." (Doc. 47, at

55 ¶ 60). Hollohan further indicated that Site 2020 was working on "increasing our

camera integration technology to be able to watch more sites, manager more sites

remotely, and increase the technology to be able to manage jobs… across North

America from one location." (Doc. 47, at 55-56 ¶ 50).

The four remaining paragraphs of this section allege "upon information and

belief" that Site 2020's Guardian PTL system includes or will include: a main light

controller module configured to monitor and control functionality of one or more

traffic lights, each traffic light comprising a signal head pointing in a direction; a

master control unit server software application that runs on the main light

controller module; a network operations control module that is in communication with the main light controller module, and; a network watcher application. (Doc. 47, at 56-57 ¶¶ 61-64).

In Count XVIII itself, Superior Traffic accuses Site 2020 of "infringing, and including actively inducing others to infringe, and/or contributing to the infringement of at least claims 1, 2, 13, 20, 21, 25, and 26-27 of the '817 Patent, in violation of 35 U.S.C. § 271, by making, using, selling and/or offering for sale, or causing others to make, use, sell, and/or offer to sell, infringing systems and devices in the form of its Guardian Portable Traffic Light (PTL)." (Doc. 47, at 70 ¶ 137).

Site 2020 characterizes all of the above as purely conclusory factual and legal allegations, and maintains they are not sufficient to state a plausible claim for direct or indirect patent infringement under the applicable pleading standard. Superior Traffic counters that Site 2020's arguments are based on an incorrect reading of the pleading standard that applies to patent infringement claims.

### B.    Applicable Pleading Standard

Prior to 2015, Rule 84 of the Federal Rules of Civil Procedure established the standard for pleading a patent infringement claim, and a plaintiff needed only to satisfy the minimal requirements of Form 18 in the Appendix of Form. Effective December 1, 2015, amendments to the Federal Rules of Civil Procedure abrogated

Rule 84. The Advisory Committee Notes on Rule 84 make clear that the abrogation of Rule 84 was not intended to "alter existing pleading standards or otherwise change the requirements Civil Rule 8." Fed. R. Civ. P. 84 (2015 Advisory Committee Note). For patent infringements suits filed after the abrogation of Rule 84, the plausibility pleading standard announced in *Twombly* and *Iqbal* applies. See e.g. *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018); *Adelos, Inc. v. Halliburton Co.*, 2017 WL 3836145, ** 5-6 (D. Mont. 2017); *e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *2 (N.D. Cal. Aug. 22, 2016 (noting that "[t]he majority of courts have found that the *Twombly* pleading standard now applies").

The parties agree that the *Iqbal/Twombly* plausibility standard applies here, but seemingly disagree on what exactly Superior Traffic must allege in order to satisfy that standard. Site 2020 cites *Atlas IP LLC v. Exelon Corp.*, 189 F.Supp.3d 768, 785 (N.D. Ill. 2016), *aff'd* 686 Fed. Appx. 921 (Fed. Cir. 2017) and a handful of other cases for the proposition that Superior Traffic must provide factual allegations that permit the Court "to infer that the accused product infringes each element of at least one claim." (Doc. 48, at 15). See also *Atlas IP LLC v. Pacific Gas and Electric Co.*, 2016 WL 1719545, at *2 (N.D. Cal. March 9, 2016) ("[S]imply reciting some elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation

to any asserted claim or addressing all of the claim requirements, in insufficient.");
*eDigital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22,
2016) (finding that patent infringement plaintiffs must "plausibly allege that the
accused product practices each of the limitations found in at least one asserted
claim); *Scripps Research Institute v. Illumina, Inc.,* 2016 WL 6834024, at *6 (S.D.
Cal. Nov. 21, 2016) (a plaintiff need not "plead with the specificity required of its
infringement contentions" but is required to "provide sufficient allegations
concerning how each limitation of the asserted claims is *plausibly* met by the
accused product").

 Superior Traffic interprets Site 2020's motion as effectively asking the Court
to adopt a heightened pleading standard requiring an element-by-element pleading
of facts for each asserted patent claim. (Doc. 51, at 11, 20). Superior Traffic argues
the "element-by-element" pleading standard advanced by Site 2020 has been
rejected by the Federal Circuit and district courts in the Ninth Circuit, including
this Court in *Adelos, Inc. v. Halliburton Co.*, 2017 WL 3836145 (D. Mont. May
30, 2017) (rejecting a "super-heightened pleading standard" that would require the
plaintiff to "demonstrate that every element of every asserted patent claim is
plausibly found in the accused products" and the court "to compare the technical
specifications of the products involved"). Based on *Adelos* and subsequent cases,
Superior Traffic takes the position that it need only plead sufficient facts to give

rise to a plausible inference that Site 2020 has infringed one or more of the claims of the patent in order to survive dismissal. *Adelos*, 2017 WL 3836145, at *7. See also *MRSI Systems, LLC v. Palomar Techs., Inc.*, 2020 WL 4227530, at *3 (S. C. Cal. 22, 2022) (declining to adopt an "each element" pleading standard and requiring only that the plaintiff "plausibly allege that a product or products of [the defendant] infringes on at least one claim of the [asserted] patent"); *Sanho Corp. v. Intelliarmor*, 2020 WL 6153265, at *3 (C.D. Cal. Sept. 25, 2020) (finding "no occasion to adopt the element-by-element pleading requirement on the facts" before the court).

In reply, Site 2020 maintains that Superior Traffic misunderstands its position and explains that it is not asking the Court to adopt an "element-by-element" pleading standard requiring Superior Traffic to demonstrate that every element of every asserted patent claim is plausibly satisfied. (Doc. 52, at 8). Rather, as described in its reply brief, Site 2020's position is that *Iqbal/Twombly* requires something more than just "describing generally how an accused product operates, without specifically tying the operation to any asserted claim," and "simply reciting some of the elements of a representative claim" without providing any factual detail is insufficient to withstand a motion to dismiss. *Atlas IP LLC v. Pac. Ga* ., 2016 WL 1719545, at *2.

As the briefing reflects, there are many federal district court decisions

setting forth different articulations of what is required for a plaintiff to plausibly plead patent infringement. At bottom, what *Adelos* recognized still holds true: the issue under *Iqbal/Twombly* is whether Superior Traffic's counterclaim pleading gives rise to a plausible inference that Site 2020 has infringed on one or more of the claims of patent '817. *Adelos*, 2017 WL 3836145, at *6. In making this determination, the Court must construe the counterclaim pleading in the light most favorable to Superior Traffic, and the "analysis should not mirror that applied during the summary judgment stage." *Adelos*, 2017 WL 3836145, at *6 (citing *Twombly*, 550 U.S. at 559-60)). The goal at this stage "is to 'avoid the potentially enormous expense of discovery … with no reasonably founded hope that the discovery process will reveal relevant evidence' to support [Superior Traffic's] claims." *Adelos*, 2017 WL 3836145, at *6 (quoting *Twombly*, 550 U.S. at 559-60)).

Consistent with *Adelos*, the Federal Circuit has since held that in the patent infringement context, "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litigation*, 681 F.3d 1323, 1335 (Fed. Cir. 2012). See also *Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) (citing *Nalco* with approval for the proposition that a plaintiff is not required to plead infringement on an element-by-element

basis). *Nalco* reaffirmed that a plaintiff "need not prove its case at the pleading stage" and must simply "place the potential infringer on notice of what activity is being accused of infringement." *Nalco*, 883 F.3d at 1350 (internal quotation marks and citations omitted). See also *Bot M8 LLC,* 4 F.4th at 1352; *Disc Disease Sols. Inc. v. VHG Sols, Inc.,* 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding that "[s]pecific facts are not necessary" to satisfy the *Iqbal/Twombly* pleading standard in a patent case, and a pleading "need only give the defendant fair notice of what the … claim is and the ground upon which it rests"). The plausibility requirement "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal that the defendant is liable" for the infringing conduct alleged. *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017).

That said, Site 2020 is correct that "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC*, 4 F.4th at 1353. The plaintiff must provide "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim," thereby raising plaintiff's right to relief above the speculative level. *Bot M8 LLC*, 4 F.4th at 1353.  As in *Adelos*, whether Superior Traffic has plausibly pled infringement  depends "less on the hyper-technicalities of the patent and [Site 2020's] products, and more on a common sense reading of" Superior Traffic's

14

pleading. *Adelos*, 2017 WL 3836145, at *6.

### C.    Direct Infringement

Direct patent infringement is governed by 38 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States … during the term of the patent therefor, infringes the patent." Count XVIII of Superior Traffic's Second Amended Counterclaims alleges that Site 2020 is directly infringing "at least claims 1, 2, 13, 20, 21, 25, and 26-27 of the '817 Patent" by making, using, selling and/or offering for sale "infringing systems and devices in the form of the Guardian Portable Traffic Light." (Doc. 47, at 70 ¶ 137).

Superior Traffic has attached a copy of the '817 patent to its counterclaim pleading (Doc. 47-3), and identifies the accused product as Site 2020's Guardian Portable Traffic Light. Superior Traffic also identifies at least one claim of the '817 patent that is allegedly infringed, naming specifically claims 1, 2, 13, 20, 21, 25, and 26-27. Additional details about the Guardian Portable Traffic Light are taken directly from Site 2020 advertisements and statements by its chief executive officer. As alleged, Site 2020 represents that its Guardian Portable Traffic Light "is the smartest portable traffic light in the world with GPS, cell and WiFi connectivity, as well as live video recording and car counting technology." (Doc. 47, at 54 ¶ 59). As further alleged, Site 2020 is working on increasing its "camera

integration technology," and has implemented technology in several states that permits "two small portable traffic lights" to "pair to a centralized tablet on the job that streams wireless video feeds from both sides to a centralized location." (Doc. 47, at 55 ¶ 60).

Citing these publicly available advertisements and statements, Superior Traffic alleges that Site 2020's Guardian Portable Traffic Light includes or will include several infringing features. (Doc. 47, at 56 ¶¶ 61-64). Tracking the elements of claim 1 of the '817 patent, Superior Traffic then alleges that the Guardian Portable Traffic Light includes or will include: a main light controller module configured to monitor and control functionality of one or more traffic lights, each traffic light comprising a signal head pointing in a direction; a master control unit server software application that runs on the main light controller module; a network control module that is in communication with the main light controller module, and; a network watcher application. (Doc. 47, at 56-57 ¶¶ 61-64; Doc. 47-3, at 50).

The last of these allegations essentially recite the elements of the patent claim. Nevertheless, Superior Traffic does allege at least some facts that, when viewed in the light most favorable to Superior Traffic, articulate why it is plausible that Site 2020's Guardian Portable Traffic Light includes infringing features. While its factual allegations are fairly sparse, Superior Traffic explains that it did

not have access to the allegedly infringing device at the pleading stage and so relied on information from Site 2020's advertisements and public statements when drafting its counterclaim. (Doc. 51, at 22-23). In *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1358 (Fed. Cir. 2007), the Federal Circuit rejected the defendant's argument that the complaint did not adequately specify the methods used in the infringing device because "at this stage of the litigation, all [the plaintiff] has access to is [the defendant's] public statements, which it used to fashion the Complaint. The specifics of how [the defendant's] purportedly infringing device works is something to be established through discovery." *McZeal*, 501 F.3d at 1358. As in *McZeal*, the specifics of how Site 2020's allegedly infringing device works is something to be established through discovery. For present purposes, it is enough that Superior Traffic's counterclaim alleges some facts which raise a reasonable expectation that discovery will reveal evidence that Site 2020's Guardian Portable Traffic Light infringes at least one claim of the '817 patent.

Based on the above, the Court finds that Superior Traffic's counterclaim pleading adequately identifies the accused product, identifies at least one claim of the '817 patent that is allegedly infringed, and has alleged at least some facts articulating why it is plausible that Site 2020's product infringes that patent claim, as required to survive dismissal and give Site 2020 fair notice of Superior Traffic's infringement claim.

## D.    Indirect Infringement

Count XVIII also pleads indirect infringement, which includes induced infringement and contributory infringement. 35 U.S.C. § 271(b), (c). Specifically, Count XVIII alleges in relevant part that "Site 2020 has been and is currently infringing, and actively inducing others to infringe, and/or contributing to the infringement" of several enumerated claims of the '817 patent. (Doc. 47, 70 ¶ 137).

Under § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." To establish induced infringement, the plaintiff must plausibly demonstrate "that the alleged infringer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). See also *In re Bill of Lading Transmission and Processing Sys. Patent. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). To establish contributory infringement under § 271(c), the plaintiff must plausibly demonstrate that the alleged infringer has sold or offered to sell "a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use...'" 35 U.S.C. § 271(c).

Unlike direct infringement, both forms of indirect infringement require proof of the alleged infringer's knowledge and intent. See *Vita-Mix Corp.*, 581 F.3d at 1328 (induced infringement); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015) (contributory infringement). In addition, for both types of indirect infringement, the plaintiff must sufficiently plead an underlying claim for direct infringement. See *In re Bill of Lading*, 681 F.3d at 1333 ("It is axiomatic that 'there can be no inducement or contributory infringement without an underlying act of direct infringement.").

Site 2020 argues Superior Traffic's indirect infringement claims should be dismissed for two reasons. First, Site 2020 argues Superior Traffic has not adequately pled a predicate act of direct infringement. As explained above, however, Superior Traffic has adequately alleged a claim for direct infringement of the '817 patent. Thus, Site 2020's first argument does not provide a basis for dismissal. Second, Site 2020 argues Superior Traffic fails to state a claim for indirect infringement because it has not provided any "factual allegations concerning the additional elements of induced or contributory infringement." (Doc. 48, at 16). In particular, Site 2020 maintains that Superior Traffic has not alleged any facts demonstrating that the knowledge and intent elements of its indirect infringement claims are satisfied. (Doc. 48, at 16).

//

1.    <u>Knowledge</u>

Superior Traffic counters that it has sufficiently pled knowledge because district courts in the Ninth Circuit have found that knowledge is plausibly alleged when the asserted patent or earlier-filed application was cited in an Information Disclosure Statement ("IDS") submitted to the Patent and Trademark Office ("PTO") by the alleged infringer. See *Corephotonics, Ltd. v. Apple, Inc.*, 2018 WL 4772340, at *8 (N.D. Cal. Oct. 1, 2018) (finding that identification of the plaintiff's patent in the alleged infringer's own patent applications makes it plausible that the alleged infringer was aware of the patent); *MasterObjects, Inc. v. Amazon.com, Inc.*, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021) (finding it plausible that the alleged infringer had knowledge of the plaintiff's patent due to the fact that it cited the patent application in PTO proceedings after the patent had issued).

Here, Superior Traffic has submitted an IDS filed by Site 2020 on April 11, 2017 during the prosecution of its '186 patent, which is one of the patents that is the subject of this lawsuit.[2] (Doc. 51-2). Site 2020's IDS cites Superior Traffic's patent application published on March 5, 2015. (Doc. 51-2, at 2). The '817 patent

---

[2] The Court takes judicial notice of this document, the authenticity of which is not challenged by Site 2020. See *Radware, Ltd. and Radware, Inc. v. A10 Networks, Inc.*, 2014 WL 61047, at *5 (N.D. Cal. Jan. 7, 2014) ("[C]ourts have taken judicial notice of prior art references, patents, and file histories.").

issued on September 5, 2015 (Doc. 47-3), in what Superior Traffic describes "as a continuation-in-part of that published patent application." (Doc. 51, at 25). Analogizing to *MasterObjects*, Superior Traffic argues the fact that Site 2020 knew of the March 5, 2015 patent application makes it plausible that by the time Site 2020 filed this lawsuit, it also knew of the patent that ultimately issued. (doc. 51, at 25).

Notably, Site 2020 does not address this issue in its reply brief, focusing instead on its argument that Superior Traffic has not adequately alleged an underlying act of direct infringement. (Doc. 52). The Court does observe that, unlike the pleadings at issue in *Corephonics* and *MasterObjects*, the Second Amended Counterclaim pleading does not specifically allege knowledge based on Site 2020's proceedings before the PTO. Nevertheless, construing the counterclaim pleading and evidence discussed above in the light most favorable to Superior Traffic, and absent any specific argument to the contrary by Site 2020 in reply, the Court finds it plausible that Site 2020 had knowledge of the '817 patent in light of the fact that it cited Superior Traffic's March 5, 2015 patent application in PTO proceedings after the '817 patent had issued.[3] See *MasterObjects, Inc.*, 2021 WL

---

[3] Even if Superior Traffic's indirect infringement claim was deficient in this respect, dismissal with leave to amend would be appropriate because the allegation of these additional facts, which are consistent the challenged pleading, could cure the deficiency. See *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) ("[L]eave to amend should be granted unless the court determines that the

4685306, at *3.

2.    Intent

Superior Traffic additionally argues it has adequately pled specific intent to induce infringement, which "may be inferred from all of the circumstances." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008). Citing the text of Count XVIII itself (Doc. 47, at 70-71 ¶ 137), along with the three paragraphs in its counterclaim pleading that draw from Site 2020's advertisements and public statements (Doc. 47, at 53-56 ¶¶ 58-60), Superior Traffic maintains it has adequately alleged that Site 2020 is marketing and selling the accused product to customers knowing that the product infringes the '817 patent. From this, Superior Traffic argues, the Court can draw the reasonable inference that Site 2020 knew its customers, through the use of the accused product, were infringing on the '817 patent, which is sufficient to plead specific intent to induce infringement. See *Trading Techs. Int'l Inc. v. BCG Partners, Inc.*, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011) ("[T]he Court may infer that by selling their infringing products the defendants intended their customers to use them and thus infringe plaintiff's patents.").

Again, Site 2020 does not address Superior Traffic's argument that it has

---

allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

adequately pled the intent element of its indirect infringement claims in its reply brief, focusing instead on the argument that Superior Traffic has not adequately alleged an underlying act of direct infringement. (Doc. 52). As discussed above, Superior Traffic has sufficiently pled direct infringement and the knowledge element of its indirect infringement claims. Drawing all reasonable inferences in Superior Traffic's favor, and absent any specific argument to the contrary by Site 2020 in reply, the Court finds Superior Traffic has adequately pled that Site 2020 "knew or should have known [its] actions would induce actual infringements."[4] *Broadcom Corp.*, 543 F.3d at 699.

While Site 2020 suggests that Superior Traffic's indirect infringement claims are deficient for additional reasons, it does not specify what those deficiencies might be and why they warrant dismissal. (Doc. 48, at 16).

## V.    <u>Conclusion</u>

For the reasons discussed above,

IT IS RECOMMENDED that Site 2020's Motion to Dismiss for Failure to State a Claim (Doc. 48) be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of

---

[4] Even if Superior Traffic's indirect infringement claim was deficient in this respect, dismissal with leave to amend would be appropriate because the allegation of additional facts as set forth in Superior Traffic's preliminary infringement contentions (Doc. 51-1), which are consistent with the challenged pleading, could cure the deficiency. See *DeSoto*, 957 F.2d at 658.

the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 1st day of April, 2022

_____

Kathleen L. DeSoto
United States Magistrate Judge