Antoinette M. Tease
ANTOINETTE M. TEASE, P.L.L.C.
175 N. 27th St., Ste. 902
Billings, Montana 59101
Telephone:  (406) 294-9000
Fax:  (406) 294-9002
Email:  toni@teaselaw.com

Andrew F. Halaby (*admitted pro hac vice*)
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:  (602) 445-8000
Fax:  (602) 445-8100
Email:  halabya@gtlaw.com

Erik M. Bokar (*admitted pro hac vice*)
GREENBERG TRAURIG, LLP
450 South Orange Avenue, Suite 650
Orlando, FL  32801
Telephone:  (407) 317-8560
Email:  bokare@gtlaw.com

*Attorneys for Defendant and Counterclaim Plaintiffs Superior Traffic Services, LLC, and Superior Traffic Systems, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SITE 2020 INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR TRAFFIC SERVICES, LLC,<br><br>Defendant. | Case No.: 9:21-cv-00063-DLC-KLD<br><br>**DECLARATION OF ANDREW F. HALABY** |

SUPERIOR TRAFFIC SERVICES,
LLC, AND SUPERIOR TRAFFIC
SYSTEMS, LLC,

          Counterclaim Plaintiffs,

          v.

SITE 2020 INCORPORATED,

          Counterclaim Defendant.

---

I, Andrew F. Halaby, do hereby affirm and declare as follows:

1.     I have been admitted to practice in Arizona since 1996. I have practiced continuously since then, primarily in the areas of business litigation, intellectual property litigation, and law of lawyering matters. I practice as a shareholder in the global law firm Greenberg Traurig, LLP, co-counsel of record for Superior Traffic Services, LLC, and Superior Traffic Systems, LLC (collectively, "Superior") in this matter. I am licensed to practice law in California, the District of Columbia, and several federal district courts, as well as before the United States Patent and Trademark Office. I have twice been admitted to practice in the District of Montana, in both instances as co-counsel to Antoinette M. Tease. I make this declaration in support of Superior's Motion for Attorneys' Fees and Costs. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify as set forth below.

2.      Attached hereto as Exhibit 1 is a true and correct copy of my March 18, 2022, letter to opposing counsel in this matter.

3.      Attached hereto as Exhibit 2 is a true and correct copy of my October 29, 2021, letter to opposing counsel in this matter.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Superior's Requests for Production Nos. 2-3 and 16, served on September 17, 2021.  Attached hereto as Exhibit 4 is a true and correct copy of plaintiff/counterclaim defendant Site 2020 Incorporated's ("Site 2020's") responses to those requests for production, served on October 25, 2021.

5.      Attached hereto as Exhibit 5 is a true and correct copy of a November 18, 2021, email from Site 2020's counsel Jonathan Nikkila transmitting Site 2020's first production of documents in this matter.

6.      Attached hereto as Exhibit 6 is a true and correct copy of Superior's Interrogatory No. 18, served on November 26, 2021.  Attached hereto as Exhibit 7 is a true and correct copy of Site 2020's response to that interrogatory, served on January 6, 2022.  Attached hereto as Exhibit 8 is a true and correct copy of Mitchell Hollohan's verification of that interrogatory, served on March 7, 2022.  Attached hereto as Exhibit 9 is a true and correct copy of Site 2020's supplemental response to that interrogatory, served on April 29, 2022.

7.      Attached hereto as Exhibit 10 is a true and correct copy of an April 28, 2022, email from Mr. Nikkila in this matter.

8.      Attached hereto as Exhibit 11 is a true and correct copy of Superior's first set of interrogatories in this matter, served on September 17, 2021.  Attached hereto as Exhibit 12 is a true and correct copy of Site 2020's response to these interrogatories, served October 25, 2021.  Attached hereto as Exhibit 13 is a true correct copy of Site 2020's supplemental response to those interrogatories, served December 7, 2021.

9.      Attached hereto as Exhibit 14 is a true and correct copy of my colleague Erik Bokar's November 10, 2021, letter to opposing counsel in this matter.

10.     Attached hereto as Exhibit 15 is a true and correct copy of Mr. Nikkila's November 24, 2021, letter to Mr. Bokar.

11.     Attached hereto as Exhibit 16 is a true and correct copy of Mr. Bokar's April 5, 2022, email to opposing counsel in this matter.

12.     Attached hereto as Exhibit 17 is a true and correct copy of Mr. Bokar's April 14, 2022, email to opposing counsel in this matter.

13.     Attached hereto as Exhibit 18 is a true and correct copy of my co-counsel Antoinette M. Tease's October 12, 2021, email to opposing counsel in this matter.

14.     Attached hereto as Exhibit 19 is a true and correct copy of Mr. Nikkila's May 23, 2022, email to me and my colleagues in this matter.

15.     Attached hereto as Exhibit 20 is a true and correct copy of my May 23, 2022, letter to opposing counsel in this matter.

16.     Attached hereto as Exhibit 21 is a true and correct copy of opposing counsel John Artz's May 25, 2022, letter to me in this matter.

17.     Attached as Exhibits 22 and 23 are true and correct copies of Site 2020's patents-in-suit, U.S. Patent Nos. 10,249,186 and 11,055,993, both titled "System and Method for Managing Traffic at a Worksite."  As shown, both claim priority to U.S. Provisional Application No. 62/306,840, filed March 11, 2016.

18.     Attached as Exhibits 24, 25, and 26 are true and correct copies of Superior's patent-in-suit, U.S. Patent No. 9,135,817, issued September 15, 2015, and two other Superior patents, U.S. Patent Nos. 8,819,313 (issued August 26, 2014) and 9,129,526 (issued September 8, 2015), all titled "Traffic Management System."  As shown, these patents all issued before the priority date of Site 2020's patents-in-suit, March 11, 2016.

19.     The following is a statement of services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were

maintained.  If the Court requires, I am prepared to provide the Court with more detailed records for an in camera inspection.

20.   Also following is a brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.

21.   Greenberg Traurig attorneys have successfully represented clients in complex intellectual property litigation throughout district courts and the Court of Appeals for the Federal Circuit.  Greenberg Traurig has been recognized as a "National Tier 1" law firm for intellectual property litigation, patent law, copyright law, trademark law, technology law, and information technology law by U.S. News. A true and correct copy of the U.S. News ranking is attached hereto as Exhibit 27 and was last accessed on October 10, 2023, at https://www.bestlawfirms.com/firms/greenberg-traurig/8794/US#rankings.

22.   Greenberg Traurig attorneys and other billing personnel are required to record their daily time, together with a description of daily work performed, and enter these amounts and descriptions into a software database maintained by Greenberg Traurig's accounting department.  Final invoices to the client are generated based on review of these data, and transmitted to the client each month. These procedures were followed in connection with the work performed by

Greenberg Traurig in this matter for Superior.  I relied on data from Greenberg Traurig's invoices in preparing this declaration.

23.    Work performed for Superior by Greenberg Traurig in this matter occurred since May 2021, and was performed primarily by the following four individuals:

24.    In concert with Ms. Tease, I served as the managing litigation partner on the case, with primary responsibility, direct and supervisory, for conducting day-to-day activity by GT personnel in this case.  That activity included, among other things, analyzing the Site 2020 patents-in-suit and their prosecution history; performing non-infringement analyses; developing overall defense strategy; conducting fact witness interviews; supervising work by associates; drafting and editing memoranda, briefs, and other filings; consulting with our technical expert; attending hearings and conferences set by the Court; and communicating with Site 2020's counsel. I am a graduate of the University of Kansas (B.S., Civil Engineering, 1990; M.S., Environmental Health Engineering, 1992) and received my J.D. (Order of the Coif) from the University of Kansas School of Law in 1996. I have been recognized in The Best Lawyers in America in Patent Litigation, among other things, since 2013.  I was listed as Best Lawyers' Lawyer of the Year in Patent Litigation in the Phoenix market in 2022.  I have also been listed in AZ Business Magazine's Top 100 Lawyers in Arizona for several years, including 2023, and in Super Lawyers

Magazine's Southwest Super Lawyers Top 50 in Arizona for several years, including 2023.  I have litigated multiple patent infringement matters, and taught multiple semesters of Patent Litigation as well as Professional Responsibility, among other courses, at the Sandra Day O'Connor College of Law at Arizona State University.

25.    As of October 10, 2023, on work for which fees are sought in this case, exclusive of fees incurred in filing and litigating this Motion for Attorneys' Fees and Costs (described in further detail below), I had billed for (and the firm had collected on, except for October's invoice for September's time) a total of 390.7 hours worked, at an hourly billing rate of $700.00 in 2021 and 2022, and $800.00 in 2023.  As an accommodation to Superior, these rates reflected a $50 per hour discount from my standard hourly rates for both 2022 and 2023.  These consist of 204 hours in Category 1 and 186.7 hours in Category 2, with the latter consisting of 27 hours arising from Site 2020's pretexting activity but not falling within "filing and litigating" the sanctions motion, and the remaining 159.7 hours attributable to work that would not have been done but for Site 2020's suing Superior for patent infringement in this matter.

26.    Mr. Bokar served as the lead associate on this matter with responsibility, either direct or supervisory, for drafting and editing of memoranda, briefs, and other filings, as well as other matters.  Mr. Bokar is a graduate of The Ohio State University (B.S. Aeronautical and Astronautical Engineering, summa

cum laude, 2014) and received his J.D. from the University of Indiana Maurer Law School in 2017.  Mr. Bokar focuses his practice on intellectual property litigation, patent prosecution, unfair competition, and competitive intellectual property analysis matters.  Mr. Bokar is admitted to practice in Illinois.  As of October 10, 2023, on work for which fees are sought in this case, exclusive of fees incurred in filing and litigating this Motion for Attorneys' Fees and Costs, Mr. Bokar had billed for (and the firm had collected on, except for October 2023's invoice for September's time) a total of 294.1 hours worked at an hourly rate of $460.00 in 2021 and $520.00 in 2022.[1]  These consist of 16 hours in Category 1 and 278.1 hours in Category 2, with the latter consisting of 0.5 hours arising from Site 2020's pretexting activity but not falling within "filing and litigating" the sanctions motion, and the remaining 277.6 hours attributable to work that would not have been done but for Site 2020's suing Superior for patent infringement in this matter.

27.     Kacie Donovan served as the junior-most associate on this matter, with her role transitioning from primarily assisting Mr. Bokar, to primarily serving as the lead associate working with me, as the emphasis of work on the case transitioned to sanctions proceedings.  Ms. Donovan is a graduate of Arizona State University (B.S., Marketing, cum laude, 2014) and received her J.D. from the Sandra Day O'Connor

---

[1] No fees are sought for any work by Mr. Bokar in 2023.

College of Law at Arizona State University, summa cum laude, in 2021.  Ms. Donovan focuses her practice on complex commercial litigation, particularly intellectual property matters.  Ms. Donovan is admitted to practice in Arizona.  As of October 10, 2023, on work for which fees are sought in this case, exclusive of fees incurred in filing and litigating this Motion for Attorneys' Fees and Costs, Ms. Donovan had billed for (and the firm had collected on, except for October 2023's invoice for September's time) a total of 411.9 hours worked at an hourly rate of $295.00 in 2021, $315.00 in 2022, and $390.00 in 2023.  These consist of 299.2 hours in Category 1 and 112.7 hours in Category 2, with the latter consisting of 14.6 hours arising from Site 2020's pretexting activity but not falling within "filing and litigating" the sanctions motion, and the remaining 98.1 hours attributable to work that would not have been done but for Site 2020's suing Superior for patent infringement in this matter.

28.     Amy Hershberger served as the primary paralegal on this matter.  Ms. Hershberger is a graduate of Goshen College (B.A., History, 2004). Ms. Hershberger completed the NALA Certified Paralegal examination and became qualified to provide Certified Paralegal Services in November 2017. Ms. Hershberger also has an ABA-approved Paralegal Certification from Phoenix College's Paralegal Studies program, which she obtained in May 2017. As of October 10, 2023, on work for which fees are sought in this case, exclusive of fees incurred in filing and litigating

this Motion for Attorneys' Fees and Costs, Ms. Hershberger had billed for (and the firm had collected on, except for October 2023's invoice for September's time) a total of 306.9 hours worked at an hourly rate of $295.00 in 2021, $310.00 in 2022, and $340.00 in 2023.  These consist of 183.8 hours in Category 1 and 123.1 hours in Category 2, with the latter consisting of 23.6 hours arising from Site 2020's pretexting activity but not falling within "filing and litigating" the sanctions motion, and the remaining 99.5 hours attributable to work that would not have been done but for Site 2020's suing Superior for patent infringement in this matter.

29.     As of October 10, 2023, exclusive of fees incurred in filing and litigating this Motion for Attorneys' Fees and Costs, Greenberg Traurig had billed (and collected on, except for October 2023's invoice for September's time) a total of $1,058.621.00 in attorneys' fees for its work on this matter.

30.     In this application, Greenberg Traurig seeks a total of only $649,759.00 in attorneys' fees in Categories 1 and 2,[2] consisting of (a) $315,801.00 for filing and litigating Superior's sanctions motion (Category 1), (b) $31,075.00 for work arising from Site 2020's pretexting activity but not falling within "filing and litigating" the sanctions motion (Category 2), and (c) $302,883.00 for work that would not have

---

[2] As described in paragraph 46 *infra*, outside of Categories 1 and 2, Superior also seeks its reasonable fees and costs in filing and litigating this Motion for Attorneys' Fees and Costs. Superior categorizes these separately, at a minimum, because of their ongoing nature.

been necessary but for Site 2020's suing Superior for patent infringement in this matter (also Category 2).

      a.     Of the total figures set forth above, a total of $537,624.00 in fees — consisting of the same $315,801.00 in Category 1 and $31,075.00 for Category 2 Item (b), but $190,748.00 for Category 2 Item (c) — was incurred on or after October 25, 2021.

      b.     Of the total figures set forth above, a total of $476,726.50 — consisting of the same $315,801.00 in Category 1 and $31,075.00 for Category 2 Item (b), but $129,850.50 for Category 2 Item (c) — was incurred on or after December 8, 2021.

      c.     Of the total figures set forth above, a total of $466,914.00 — consisting of the same $315,801.00 in Category 1 and $31,075.00 for Category 2 Item (b), but $120,038.00 for Category 2 Item (c) — was incurred on or after January 6, 2022.

31.     Ms. Tease and I have worked together on other Montana-related litigation matters over the last decade.  In addition to her outstanding knowledge of the patent laws and their application, she is able to bring to wield her in-depth knowledge of the client, its business and technology, and local litigation practices and norms.  Working closely with Ms. Tease, I am able to contribute the resources of a large law firm, otherwise not generally available to Montana-based clients, to

help meet the client's needs, particularly time-sensitive, resource-consuming needs arising from a complex litigation matter like this one.

32.    As is our norm, Ms. Tease and I worked together on this matter to sensibly allocate tasks between our firms so as to optimize use of available resources while mitigating costs incurred by our client.  Ms. Tease, for example, took or defended all depositions in this matter, and handled the majority of interactions with Superior on issues relating to the historical development of its technology.  My Greenberg Traurig colleagues and I, on the other hand, bore primary responsibility for handling invalidity and noninfringement analyses, as well as work on the sanctions proceedings and other matters where a solo practitioner could not feasibly handle the work to be done within the available timeframe.

33.    Category 1, as referenced in Doc. 139, consists of Item (a) above. Category 2, as referenced in Doc. 139, consists of Items (b) and (c) together.

34.    Category 1 (Item (a)) includes participating in the May 17, 2022, status conference; assisting Ms. Tease in preparation for related depositions; reviewing documents produced by Site 2020 on sanctions issues; reviewing and incorporating deposition testimony, discovery responses, and other materials into Superior's various sanctions briefs and use at argument on Superior's sanctions motion; working on Superior's motion for sanctions, supporting memorandum, supporting witness declarations, video deposition excerpt submissions; review and analysis of

Site 2020's responsive brief and supporting declarations and exhibits; working on Superior's reply brief in support of its motion for sanctions, including selection and incorporation of exhibits and other evidence; reviewing and responding to Site 2020's motion for leave to file sur-reply; preparation for and presentation of oral argument on the sanctions motion, including preparation of demonstrative exhibits; preparation and submission of proposed findings of fact and conclusions of law, including pertinent factual and evidentiary references; review and analysis of Site 2020's proposed findings of fact and conclusions of law; preparation of submissions relating to motions to seal; review of pertinent court orders as well as findings and recommendation; and review and response to Site 2020's objections to findings and recommendation.  Work in Category 1 was intensely factual, and the legal issues addressed in Category 1 unusually complex, considering the uniqueness and gravity of Site 2020's misconduct.   Work in Category 1 was correspondingly time-consuming.

35.    Category 2 (Item (b), as referenced above) consists of pre-May 17, 2022, work[3] arising from Site 2020's pretexting activity, including confirming that such activity had actually occurred; deposition and discovery efforts with respect to Southwest Safety; interactions with the client and between counsel (Greenberg

---

[3] It was on May 17, 2022, that Superior brought the issue of Site 2020's litigation misconduct to the Court's attention.  (*See* Docs. 89, Doc. 111 at 7.)

Traurig and Ms. Tease); factual investigation; legal research; preparing for the status conference itself; and work on the anticipated sanctions motion.[4]

36.     Item (c) includes review and analysis of Site 2020's patents; prior art searches and analysis; fact-gathering as to client's prior development of claimed inventions; invalidity and noninfringement analysis as to Site 2020's patents; development of defenses to Site 2020's infringement claims; work on Superior's pleadings responding to those claims; preparation of invalidity, non-infringement, claim construction, and technology tutorial submissions; preparation and transmission of initial disclosures as to the defense of Site 2020's patent infringement claims; preparation for Markman hearing; as to fact witnesses, work on deposition notices and preparation (including exhibit selection) as well as review, annotation, and use of deposition transcripts;  settlement analysis and communications; work on selecting and interfacing with our technical expert (described in more detail below); and routine case activity such as work on the confidentiality stipulation, work on the case management plan, and miscellaneous

---

[4] Of the total figures for Item (b), Kacie Donovan spent 13 hours and I spent 3.5 hours, totaling $6,545.00 in fees, working on the anticipated sanctions motion. Those fees thus properly may be considered as part of Category 1 instead of Category 2, Item (b), but we have included them in the latter since they were incurred before the May 17, 2022, status conference.

other file management and other activity and research in support of the defense of this case.

37.     Item (c) does not include, for example, work on or in support of Superior's counterclaims, such as in responding to Site 2020's motion to dismiss Superior's patent infringement counterclaim.  Nor does it include work where the time billed was not demonstrably dedicated exclusively to defending Site 2020's patent infringement claims, such as on discovery and discovery-related correspondence and in working with Superior's damages expert.  Nor does it include fees billed to and paid by Superior for work on this matter by other GT personnel besides those identified above, including appellate counsel Dominic Draye (6.4 hours worked at average hourly rate of $1,080.00, on potential appellate issues relating to sanctions ruling), associate Shalayne Pillar (56.2 hours worked at average hourly rate of $338.70, primarily on pleadings focusing on Superior's counterclaims), or litigation support consultant Jose Diaz (5.1 hours worked at average hourly rate of $178.97).

38.     Greenberg Traurig's rates in this case are in line with the prevailing rates for similar patent litigation work, especially given the scope and schedule of the cases. Additionally, survey evidence, including the PricewaterhouseCoopers

("PwC") 2023 Revenue Management Report[5], also establishes Greenberg Traurig's rates as reasonable. According to this report, the median national rates for intellectual property litigation attorneys is as follows:

Equity Partner: $1,345 per hour

Non-Equity Partner: $1,076 per hour

Senior Associate (Law Class Year 2017): $1,001 per hour

Junior Associate (Law Class Year 2021): $723 per hour

Greenberg Traurig's average hourly rates were below average for each of these levels.

39.    The American Intellectual Property Law Association's 2021 Report of the Economic Survey ("AIPLA survey"), true and correct excerpts of which are attached as Exhibit 28, also establish Greenberg Traurig's rates as reasonable. The survey does not list data for the Phoenix metropolitan service area.  According to the survey, the average hourly rate for intellectual property litigation equity partners in Los Angeles, the nearest metropolitan service area and one in which I sometimes practice, ranged in 2020 (the most recent year for which data are available) from a median of $613 per hour to a 90th percentile rate of $1,200, with an average of $657

---

[5] This report was prepared for Greenberg Traurig subject to restrictions on third-party distribution. Thus, the relevant portions of the report are quoted in this declaration but are not reproduced as an exhibit.

and a third quartile rate of $780.  For lawyers with a master's degree, these rates (measured nationwide) were $525, $933, $571, and $933.  And for a firm that, like GT, has more than 150 full-time intellectual property lawyers and agents, these rates (measured nationwide) were $795, $1,240, $822, and $1,100.  According to the survey, the average hourly rate for private firm, partner-track attorneys with fewer than five years of experience (as Mr. Bokar had when this matter commenced in 2021) ranged in 2020 from a median of $340 to a 90th percentile rate of $676, with an average of $375 and a third quartile rate of $443.  For firms with more than 150 full-time intellectual property lawyers and agents, the median rate was $585, the average rate was $640, and the third quartile rate was $810.[6]

40.    I reviewed all invoices before they were sent to ensure that the time charged accurately reflected the work performed and that the work was performed by persons at the appropriate level.

41.    Ethics Rule 1.5, as adopted in my home state of Arizona, in Montana, and in the District of Montana, provides that a lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. In furtherance of my obligation and commitment to abide by this rule, to see that others from Greenberg Traurig did so as well, and to otherwise ensure that our

---

[6] There were insufficient data to report a 90th percentile rate.

billings to Superior were not excessive, redundant, or unnecessary, I took a variety of steps beyond my own personal and direct supervision of work on this matter, including but not limited to the following:

        a.      I staffed the matter leanly, with work pushed down to the lowest-rate timekeeper who could properly and efficiently perform the work.  For example, on the Category 2 work for which attorneys' fees are sought, I billed 186.7 hours, or 32% of the total attorney time spent, while Mr. Bokar billed 278.1 hours, or 48%, and Ms. Donovan billed 112.7 hours, or 20%.  On the Category 1 work for which attorneys' fees are sought, we pushed much more of the work to Ms. Donovan, who could handle it at her lower billing rate.  On that work, I billed 204 hours, or 39% of the total attorney time spent, while Ms. Donovan billed 299.2 hours, or 58%, and Mr. Bokar billed only 16 hours, or 3%.

        b.      I provided guidance to team members on proper billing practices.

        c.      I personally reviewed each billing entry in each pre-bill on this matter.  In the exercise of billing judgment, I chose to not bill Superior for more than $67,000 worth of work done by Greenberg Traurig lawyers and staff working on this matter since its inception in 2021.

    42.    I also have reviewed Ms. Tease's Declaration in this case. The total "lodestar" of 1,617.6 hours for total fees sought of $729,800.00, and its components of 792.9 hours for total fees sought of $349,903.50 for Category 1 and 824.7 hours

for total fees sought of 379,896.50 for Category 2, all are eminently reasonable for this case.

43.     Superior seeks an additional award under 35 U.S.C. § 285. *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (costs and expenses, including, "those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit" are recoverable under § 285.)   Greenberg Traurig incurred $44,406.28 in costs and expenses in this litigation. Of this amount, Greenberg Traurig seeks to recover $35,212.19, consisting of, generally, research expenses, travel and lodging, PACER, and shipping and mailing costs. Of this total figure, $3,577.65 was incurred in Category 1, $273.02 in Category 2 Item (b), and $31,361.25 in Item (c).

44.     Superior seeks an additional award, pursuant to the Court's inherent authority, of expert witness fees incurred in this case. *Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011). Superior specifically seeks the expert fees of Dr. Kelly Palframan in an amount of $42,737.75. True and correct copies of Dr. Palframan's invoices, as paid by Superior, are attached hereto as Exhibit 29.

45.     Dr. Palframan's hourly rates of $430 for consultation and travel time, $175 for staff research and analysis, and $325 for staff peer review of her research and analysis, all are, in my experience, consistent with rates charged by other top-

quality technical experts. As shown by her CV, Dr. Palframan is a highly qualified expert in the subject matter encompassed by Site 2020's patents-in-suit and the products in question in this lawsuit. For example, Dr. Palframan holds three degrees, including a Ph.D and M.S. in civil engineering from Virginia Tech and a B.S. in civil engineering from Florida State University; is a licensed professional engineer in the state of Florida; and is an American Traffic Safety Services Association certified traffic control supervisor. Dr. Palframan has authored, co-authored or presented on a wide variety of topics related to traffic control systems and technology, including her dissertation, "Addressing Issues of School Bus and School Bus Stop Safety Using Intelligent Transportation Systems and Connected Vehicle Technology," as well as publications including "Big Data Analysis – Combining GPS with Traffic Signal Data Logger Records."

46.    Outside of Categories 1 and 2, Superior also seeks its fees and costs in filing and litigating this Motion for Attorneys' Fees and Costs. *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *see also Anderson v. Dir., Off. of Workers Compen. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996). The "exceptional case" showing of the manner in which this case was litigated required extensive, detailed review of Site 2020's conduct and the work it necessitated over the life of this case since May 2021, as reflected in, at a minimum, the exhibits attached to this declaration. It also required review and analysis of the impropriety

of Site 2020's manner of litigation under applicable law.   This work was correspondingly time-consuming:   Through October 10, 2023, Greenberg Traurig timekeepers had worked more than 100 hours on Superior's Motion for Attorneys' Fees and supporting documentation, at a cost to Superior substantially in excess of the $30,000.00 in attorneys' fees Superior seeks for such work done so far. Consistent with the statements above, these fees are reasonable. Through October 10, 2023, Superior incurred $516.51 in research expenses associated with filing and litigating the Motion for Attorneys' Fees and Costs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on *October 13*, 2023, in Phoenix, Arizona

_____

Andrew F. Halaby

-22-

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on October 13, 2023, a true and correct copy of this document has been served on counsel of record through the Court's electronic filing system.

*/s/Andrew F. Halaby*
Andrew F. Halaby

*Attorney for Defendant/*
*Counterclaim-Plaintiffs*