IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SITE 2020 INCORPORATED, | CV 21–63–M–DLC |
| Plaintiff/Counterclaim Defendant, | |
| vs. | ORDER |
| SUPERIOR TRAFFIC SERVICES, LLC, AND SUPERIOR TRAFFIC SYSTEMS, LLC, | |
| Defendants/Counterclaim Plaintiffs. | |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendation ("F&R") regarding Defendant/Counterclaim-Plaintiff Superior Traffic Services LLC and Defendant/Counterclaim-Plaintiff Superior Traffic Systems, LLC's (collectively "Superior Traffic") Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Doc. 148) and Motion for Attorneys' Fees and Costs (Doc. 141). (Doc. 167.) Judge DeSoto recommends that this Court grant Superior Traffic's Motion to Voluntarily Dismiss its Counterclaims against Plaintiff/Counterclaim-Defendant Site 2020 Inc. ("Site 2020") without prejudice and grant in part and deny in part its Motion for Attorneys' Fees and Costs. For the reasons herein, the Court adopts Judge

1

DeSoto's F&R in full.

## BACKGROUND[1]

Site 2020 and Superior Traffic compete against one another in the portable traffic signal industry. Site 2020 filed this action in 2021, alleging that Superior Traffic infringed on two Site 2020 patents. Superior Traffic asserted several counterclaims and Site 2020 moved to dismiss those counterclaims. In April 2022, following Judge DeSoto's F&R recommending that Site 2020's motion to dismiss be denied, Superior Traffic moved for leave to file Third Amended Counterclaims.

In May of 2022, Superior Traffic raised allegations of serious misconduct by Site 2020 during a status conference. Based on these allegations, the Court vacated the pretrial scheduling order to allow limited discovery on Superior Traffic's allegations. In July of 2022, Superior Traffic filed a motion for sanctions, asking the Court to dismiss Site 2020's patent infringement claims with prejudice due to its litigation misconduct and enter default judgment in favor of Superior Traffic on Superior Traffic's counterclaims.

Following a hearing, Judge DeSoto found that Site 2020 had engaged in litigation misconduct and recommended that this Court grant Superior Traffic's

---

[1] Judge DeSoto's F&Rs (Docs. 132, 167) provide thorough factual backgrounds and the Court adopts them in full. The limited background provided here is taken from those F&Rs.

motion for sanctions dismissing Site 2020's patent infringement claims. Judge

DeSoto further recommended that Site 2020 pay Superior Traffic's reasonable

attorney fees and costs incurred in filing and litigating its motion for sanctions.

This Court adopted Judge DeSoto's findings and recommendations in full.

Superior Traffic then filed a motion to voluntarily dismiss its Third

Amended Counterclaims without prejudice pursuant to Federal Rule of Civil

Procedure 41 (Doc. 148) as well as a motion for attorney fees and costs (Doc. 141).

## LEGAL STANDARD

Site 2020 timely filed objections to the F&R. (Doc. 168.) Consequently, Site

2020 is entitled to *de novo* review of those findings and recommendations to which

it objects. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114,

1121 (9th Cir. 2003). Absent objection, this Court reviews the Findings and

Recommendation for clear error. *McDonnell Douglas Corp. v. Commodore Bus.*

*Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is

left with a "definite and firm conviction that a mistake has been committed."

*United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

## DISCUSSION

### I.    Category 1 Attorney Fees

Site 2020 objects to the F&R's calculation of Category 1 attorney fees.

Specifically, Site 2020 takes issue with the F&R's departure from the general rule that the relevant community is usually the forum in which the district sits. Reviewing *de novo*, the Court finds the F&R's calculation of Category 1 fees to be appropriate.

Courts in the Ninth Circuit "must calculate awards for attorneys' fees using the lodestar method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (internal quotation marks and citations omitted). "The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (internal quotation marks and citation omitted). The party seeking fees "must submit evidence supporting the hours worked and the rates claimed" and the Court should exclude from its calculation "hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar is presumed to be reasonable but can be adjusted upward or downward "only in rare and exceptional cases" when "supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Id.* (internal

4

quotation marks and citations omitted).

The Ninth Circuit also requires that courts consider some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), when determining what amount of fees is reasonable. *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988).[2] However, once the lodestar has been established, "the court may increase or reduce the presumptively reasonable lodestar fee with reference to the [*Kerr*] factors that have not been subsumed in the lodestar calculation." *Id.*

## A. Relevant Community

"Generally, when determining a reasonable hourly rate for an attorney, the relevant community is the forum in which the district court sits"; however, "[r]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform or because they lack the degree of

---

[2] The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 539 n.1; *see also Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014).

experience, expertise, or specialization required to properly handle the case."

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal

citation and quotations omitted); *see also* 10 Moore's Fed. Practice (Civil) §

54.190 (2023) (A district court may adjust the "base hourly rate to account for a

[party's] reasonable decision to retain out-of-district counsel, just as it may adjust

the base hourly rate to account for other case-specific variables.").

Here, Judge DeSoto found that it was "appropriate to expand the relevant

community beyond the forum district of Montana to include the districts where"

Superior Traffic's out-of-district attorneys with Greenberg Traurig, LLP practice

because "the Court is not aware of any Montana law firm that is currently

representing parties in patent litigation matters of comparable complexity and

scope without the specialized assistance of out-of-district counsel." (Doc. 167 at

38.)

Site 2020 objects to that finding, repeatedly insisting that Superior Traffic's

out-of-district counsel should be paid at the same rate as Superior Traffic's local

counsel, Antoinette M. Tease.[3] (*See* Doc. 168 at 15–21.) The Court disagrees.

Given the complexity of this case, Superior Traffic sought additional

---

[3] Site 2020 made identical arguments to Judge DeSoto. (*Compare* Doc. 154 at 30–
31 *with* Doc. 168 at 15–21.) As a reminder to Site 2020 and its counsel, under the
Local Rules of this District and relevant caselaw, "[i]t is not sufficient for the

resources from a large firm with expertise in intellectual property litigation. (Doc. 151 at 31.) Superior Traffic provided supporting declarations from Ms. Tease and Greenberg Traurig counsel, Andrew F. Halaby, which detail the reasonable necessity for Superior Traffic to retain specialized out-of-district counsel to represent it in this action. (Docs. 143 ¶¶ 31–32; 144 ¶¶ 9–10, 12.) Mr. Halaby also attested to Greenberg Traurig's expertise as it relates to complex intellectual property litigation. (Doc. 143 ¶ 21.) In Ms. Tease's affidavit, she attested that "the District of Montana does not typically see patent litigation matters of this scope." (Doc. 144 ¶ 11.) Both declarations explain that Greenberg Traurig was "able to contribute the resources of a large law firm, otherwise not generally available to Montana-based clients, to help meet the client's needs, particularly time-sensitive, resource-consuming needs arising from a complex litigation matter like this one." (Docs. 143 ¶ 31; 144 ¶ 9.) Greenberg Traurig "bore primary responsibility for handling invalidity and noninfringement analyses," in addition to the work on the sanctions proceedings, that a solo practitioner like Ms. Tease "could not feasibly

---

objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Anderson v. Montana*, 2024 WL 1270893, at *2 (D. Mont. Mar. 26, 2024). The Court hesitantly applies *de novo* review here but may decline to do so in the future should counsel continue to ignore the Local Rules.

handle . . . within the available timeframe." (Docs. 143 ¶ 32; 144 ¶ 10.)

Site 2020 does not point this Court to an in-district law firm that could handle the complexity and scope of this matter, and it is worth highlighting that Sight 2020 hired its own out-of-district counsel, John S. Artz and Jonathan Nikkila of Dickinson Wright PLLC, to bring its claims against Superior Traffic. Site 2020 seems to believe that it was entitled to hire out-of-district counsel to pursue its patent claims against Superior Traffic, but Superior Traffic was obligated to retain local counsel—and only local counsel—to defend itself.

Site 2020 also objects to Judge DeSoto's interpretation of this Court's holding in *Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078 (D. Mont. 2019). (Doc. 168 at 18.) Specifically, Site 2020 contends that the *Wooten* decision precludes Judge DeSoto's expansion of the relevant community. (*Id.*) Contrary to Site 2020's depiction of *Wooten*, the Court did not hold that it is *categorically* improper to define the relevant community of attorneys by looking to a nationwide group of specialized attorneys. Rather, the Court declined, *in that instance*, "to define the relevant community as broadly as 'attorneys with nationwide experience in railroad litigation.'" *Wooten*, 387 F. Supp. 3d at 1108.

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and

8

reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho*, 523 F.3d at 980. Site 2020 falls short of meeting its burden of rebuttal here, and the Court concludes that the relevant community includes the districts where Greenberg Traurig's attorneys practice.

## B. Prevailing Market Rates

It is unclear whether Site 2020 objects to the F&R's finding regarding the prevailing market rates in the relevant community. To the extent Site 2020 attempts to do so through Footnote 2, the Court overrules the objection.

Site 2020 cites to a 2017 Montana State Bar Member Survey which reported that 80% of respondents billed between $151 and $300 per hour. The Court attaches little weight to this report. First, the report is eight years old. Decreasing attorney fees to align with the rates reported in 2017 would require the Court to ignore the worldwide inflation that has taken place since the COVID-19 pandemic, and the resulting increase in the costs of goods and services. Second, as highlighted in the previous section, there are few attorneys in this District that specialize in intellectual property litigation. A prevailing market rate "should represent what a lawyer of comparable skill, experience, and reputation could command in the same community for comparably complex litigation. *Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *3 (D. Mont. Apr. 4, 2019) (citing *Blum v.*

*Stenson*, 465 U.S. 886, 895 (1984)).

Site 2020 also cites to several out-of-district cases. The Court finds those cases unpersuasive to the task at hand. Three of the cases only addressed prevailing market rates in the District in which the case was brought. *Composite Resources, Inc. v. Rood*, 2023 WL 2354831, at *2 (D. Idaho Mar. 3, 2023); *Rhino Metals, Inc. v. Kodiak Safe Co. LLC*, 2018 WL 11419856, at *4 (D. Idaho June 28, 2018); *Aoki v. Gilbert*, 2022 WL 956949, at *2 (E.D. Cal. Mar. 30, 2022). In the other three cases, the reasonableness of the rate was uncontested. *Horowitz v. Chen*, 2019 WL 9313599, at *5 (C.D. Cal. Aug. 22, 2019); *Sunlighten, Inc. v. Finnmark Designs*, 2021 WL 3010010, at *1 (D. Nev. July 15, 2021); *Top Lighting Corp. v. Linco, Inc.*, 2019 WL 13020830, at *8 (C.D. Cal. Aug. 26, 2019) (explaining that the opposing party contested the fees based on the time expended).

Site 2020's objection is overruled.

## C. Judge DeSoto's Remaining Findings Regarding Attorney Fees

Neither party objects to Judge DeSoto's findings regarding the hours expended as to Category 1 fees or Superior Traffic's request for Category 2 fees under 35 U.S.C. § 285. Reviewing those findings for clear error, the Court finds

10

none.

## II. Voluntary Dismissal

Next, Site 2020 objects to Judge DeSoto's recommendation that Superior Traffic's Counterclaims be dismissed without prejudice. (Doc. 168 at 14.) Specifically, Site 2020 contends that permissive dismissal of Superior Traffic's counterclaims is "unfairly prejudicial" due to "the advanced stage of litigation, the significant effort and expense already incurred, and the clear duplication of efforts that would be required if Superior Traffic were to bring another lawsuit." (*Id.*) The Court finds these objections conclusory and repetitive to the arguments Site 2020 made in the underlying briefing, in violation of the local rules.

"A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (citing *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987)). "'Legal prejudice' means 'prejudice to some legal interest, some legal claim, some legal argument.'" *Id.* at 976 (quoting *Westland Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)). Legal prejudice does not result merely because the defendant has incurred litigation costs, *Westland Water Dist.*, 100 F.3d at 97, nor does it occur simply because the defendant may face a second lawsuit on the same set of

11

facts, *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982).

In considering whether voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2) should be with or without prejudice, "District courts in the Ninth Circuit typically consider the following factors[]: (1) the defendant's effort and expense involved in preparing for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; and (3) insufficient explanation of the need to dismiss." (Doc. 167 at 8 (quoting *Kenner v. Bitterroot Timber Frames, LLC*, 2022 WL 1265839, at *4 (D. Mont. Apr. 28, 2022).) The Court analyzes each factor in turn.

### A. Effort and Expense

First, Site 2020 contends that the F&R "improperly ignores the significant progression of the case prior to the previous sanctions motion." (Doc. 168 at 22.) Site 2020 highlights that the parties were "a handful of weeks" away from the close of discovery when the litigation was derailed. (*Id.*) Site 2020 further points to the fact that Superior Traffic has spent more than $500,000 in advancing its counterclaims. (*Id.*) These considerations, according to Site 2020, support dismissal with prejudice. Ninth Circuit precedent instructs otherwise. *Westlands*, 100 F.3d at 97 ("We have explicitly stated that the expense incurred in defending

against a lawsuit does not amount to legal prejudice.").

Next, Site 2020 accuses the F&R of "inappropriately dismiss[ing] Site 2020's concern regarding the potential loss of federal forum if Superior Traffic later asserts certain . . . counterclaims in state court." (Doc. 168 at 23.) Again, the law does not support Site 2020's position. In *Westlands*, the Ninth Circuit held that "the threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice." 100 F.3d at 96. The *Westlands* Court cited favorably to *American National Bank & Trust Company v. Bic Corporation*, where the Tenth Circuit held that the "possibility that plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary motion to dismiss without prejudice . . . . Thus, there is no legal prejudice to defendant even if a trial is held in state court." 931 F.2d 1411, 1412 (10th Cir. 1991).

In sum, the Court finds that the first factor weighs in favor of dismissal without prejudice.

### A. Delay and Diligence

Site 2020 contends that "the F&R . . . dismisses Site 2020's arguments without consideration." (Doc. 168 at 23.) Site 2020 accuses Superior Traffic of waiting "until just weeks before the close of fact discovery to switch its infringement allegations to an entirely different accused product—despite being

well aware of that product for more than a year before seeking to shift its

infringement theory." (*Id.*) But Site 2020 conveniently omits that Judge DeSoto

already found that Superior Traffic diligently pursued discovery and did not unduly

delay in seeking leave to file its Third Amended Complaint (Doc. 132 at 59–60), a

finding that this Court adopted in full (Doc. 135 at 24.) The Court rejects Site

2020's bold request to ignore its own orders and finds—again—that Superior was

diligent in litigating its counterclaims. This factor weighs in favor dismissal

without prejudice.

### B. Explanation of the Need to Dismiss

Finally, Site 2020 contends that Superior has not provided sufficient

explanation for its need to dismiss its counterclaims. (Doc. 168 at 23.) The Court

disagrees. Superior Traffic did not initiate this litigation and has sufficient reason

to oppose litigating against Site 2020. As this Court has already explained, forcing

Superior Traffic to continue defending itself against a party that has demonstrated

its eagerness to deceive its way to a perceived advantage and engage in flagrant

contempt for the judicial process would amount to unfair punishment to Superior

Traffic. (Doc. 135 at 28.) This factor weighs in favor of dismissal without

prejudice.

Reviewing Judge DeSoto's remaining findings and recommendation for

clear error, the Court finds none.

CONCLUSION

Accordingly, IT IS ORDERED that:

1. SITE 2020's objections are OVERRULED and Judge DeSoto's Findings and Recommendation (Doc. 167) are ADOPTED IN FULL;

2. Superior Traffic's Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Doc. 148) is GRANTED;

3. Superior Traffic's Motion for Attorney Fees and Costs (141) is GRANTED IN PART and DENIED IN PART as follows:

   a. Superior Traffic's request for Category 2 fees under 35 U.S.C. § 285 is DENIED;

   b. Superior Traffic is GRANTED Category 1 fees in the amount of $315,464.50 and Category 1 costs in the amount of $4,041.06; and

   c. Superior Traffic is GRANTED a total of $23,687.75 in attorney fees and costs incurred in litigating its motion for attorney fees ("fees-on-fees").

DATED this 1st day of May, 2025.

Dana L. Christensen, District Judge
United States District Court

15